UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAGNA MIRRORS OF AMERICA, INC.,

       Plaintiff,

                                  CASE No. 1:17-cv-77

v.

                                  HON. ROBERT J. JONKER

SMR AUTOMOTIVE MIRRORS UK
LIMITED, et al.,

       Defendants.

_____/

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

### INTRODUCTION

       Plaintiffs and Defendants compete in the automotive market. This case involves a patent dispute over side view mirror systems. Magna says SMR has infringed claims in the ten patents in suit.[1] More specifically, the claims at issue pertain to a side view mirror system with a primary flat (or plano) reflective mirror, and a separate, curved auxiliary reflective mirror, designed to reduce the driver's blind spot. (Magna Mirrors' Br., ECF No. 167, PageID.8991-8992). This order addresses the terms the parties have asked the Court to construe.

---

[1] These are U.S. Patent Nos. 7,934,843 (the "'843 patent"), 8,128,243 (the "'243 patent), 8,128,244 (the "'244 patent"), 8,147,077 (the "'077 patent"), 8,267,534 (the "'534 patent"), 8,550,642 (the "'642 patent"), 8,591,047 (the "'047 patent"), 8,783,882 (the "'882 patent"), 8,899,762 (the "'762 patent"), and 9,694,750 (the "'750 patent"). The Court's CMO required Plaintiff to winnow its claims for the first round of adjudication, and there are presently no claims from the '243 patent at issue. On February 28, 2018, the Court denied SMR's motion to dismiss the '243 patent from the case entirely. (ECF No. 136).

# CLAIM CONSTRUCTION PRINCIPLES

When the meaning of a claim's language is disputed, the court must construe the claim as a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370, 116 S. Ct. 1384 (1996). Proper claim construction begins with the language of the claims themselves. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "'In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention. 35 U.S.C. § 112, ¶ 2.'" *Brookhill–Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003) (quoting *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (internal quotations omitted)). The Court must give claim terms the ordinary and customary meaning ascribed to them by "a person of ordinary skill in the art in question at the time of the invention, i.e, as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

When interpreting a claim as understood by a person of ordinary skill in the art, the court first examines the evidence before it, which includes not only the claim language, but also the written description and the prosecution history of the patent. *Phillips*, 415 F.3d at 1319. Terms that have a plain and ordinary meaning typically do not need to be construed, as their meaning is clear from the term itself. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010). A court considers the written description "because it is relevant not only to aid in the claim construction analysis, but also to determine if the presumption of ordinary and customary meaning is rebutted." *Brookhill–Wilk 1, LLC*, 334 F.3d at 1298. In fact, the specification is usually "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. The

prosecution history may also be considered to "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317.

A court may also consider extrinsic evidence, such as dictionaries, treatises, and expert or inventor testimony, in construing patent claims. *See id.* Technical dictionaries may help a court understand "the meaning of particular terminology to those of skill in the art of the invention." *Id.* at 1318. Likewise, expert testimony may be useful for explaining the technology at issue and how the particular invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of ordinary skill in the art, or to establish that a particular claim in the patent or in prior art has a particular meaning in the pertinent field. *See id.* While a court may consider both intrinsic and extrinsic evidence, intrinsic evidence is generally more reliable and thus generally entitled to greater weight when construing a claim term. *See id.* at 1320–21. What ultimately controls, however, is the language of the claims themselves: "[T]he court's focus [must] remain[ ] on understanding how a person of ordinary skill in the art would understand the claim terms." *Id.* at 1323. Thus, "'[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1995)).

# CLAIM ANALYSIS

1. *"in a side-by-side relationship"*

The parties propose the following constructions of the term "in a side-by side relationship" as it appears in the following claims and patents:

| CLAIM TERM | ASSERTED CLAIMS | MAGNA MIRRORS' PROPOSED CLAIM CONSTRUMTION | SMR'S PROPOSED CLAIM CONSTRUCTION |
|---|---|---|---|
| "adjacently . . . in a side-by-side relationship and not superimposed with one reflective element on top of the other reflective element" / "adjacently, in a side-by-side relationship and are not superimposed with one mirror element on top of the other mirror element" | '843 patent claims 15, 33; '244 patent claims 24, 26 '077 patent claims 22, 24, 27; '762 patent claims 8, 15; '047 patent claims 16, 19, 25, 26, 27, 33, 35, 39; '882 patent claims 3, 18, 20; '750 patent claims 8, 14, 25 | The elements are arranged next to each other, rather than with one element on top of the other element, as depicted, for example, in Figures 13A-13H of the patents-in-suit. | Having a single side in common. |

The dispute over the parties' competing constructions is whether the claim term requires that the primary and auxiliary mirrored elements are positioned next to each other rather than one mirror on top of the other, as Magna Mirrors contends (Magna Mirrors' Br., ECF No. 167, PageID.8996-8997) or whether the term means that the two elements share one and only one side, as SMR contends. (SMR's Br., ECF No. 170, PageID.9946).

SMR argues that "in a side-by-side relationship" must mean something different than "adjacently" in order to give meaning to the two phrases, and that its construction is the only one that gives meaning to both. That there are other claims that use "adjacently" without "side-by-side" only confirms, according to SMR, that adjacent is something different and broader than side-by side. SMR states its construction is grounded in the term's plain meaning and "gives effect to

each and every component part of the claims at issue." (SMR's Br., ECF No. 170, PageID.9947). Magna Mirrors counters that its construction does give meaning to both phrases and its construction is consistent with the ordinary meaning of the claim. Furthermore, according to Magna Mirrors, a person of ordinary skill in the art would understand that "in a side-by-side relationship" was included in the patent for the purpose of distinguishing its auxiliary mirrors from those aftermarket commercially available stick-on spotter mirrors that are superimposed on top of a factory-installed main flat mirror. (Magna Mirror's Br., ECF No. 167, PageID.8996). Finally, Magna Mirrors asserts that SMR's construction would exclude the preferred embodiment. (*Id.*).

The starting point is the language in the claims themselves. *See Phillips*, 415 F.3d at 1317. Nothing in the claim language includes a requirement that the primary and auxiliary mirrors share a single side. Generally, courts do not imply a claim term that the drafter did not include and that logic does not require. *See Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003) (emphasizing that analytical focus belongs on language of the claims themselves).

SMR makes two arguments for why this requirement is implicit in the claim term, neither of which the Court finds persuasive. SMR first argues that its construction is correct because the phrase is singular (sid**e**-by-sid**e**) rather than plural. (SMR's Br., ECF No. 170, PageID.9946). It is true that a "side" of the primary mirror must be "by" a "side" of the auxiliary mirror (and vice versa) but nothing in the phrase precludes another side of the auxiliary mirror from being "by" the same side (or different side) of the primary mirror. *Cf. Accent Packaging*, *Inc. v. Leggett &Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) (citing *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F3d 1339, 1342 (Fed. Cir. 2008) and concluding that nothing in the claim language of the patent-in-suit prevented an elongated operator body from being connected to an additional operator body).

SMR further argues that "adjacent" and "side-by-side" must mean different things because some claims use both terms and others do not. The Federal Circuit holds that "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). And "[i]nterpretations that render some portion of the claim language superfluous are disfavored." *Power Mosfet Techs., L.L.C. v. Siemens AG,* 378 F.3d 1396, 1410 (Fed. Cir. 2004). According to SMR, Magna Mirrors' proposed construction makes "side-by-side" mean nothing more than "adjacent." The Court disagrees. During the *Markman* hearing, Magna Mirrors offered an illustration from geography to explain how its construction does, in fact, give meaning to both terms. The shaded states below, Utah and New Mexico, are adjacent to each other, but not side-by-side.



Similarly two light squares on a chessboard, on which a queen chess piece might move diagonally across, may be considered adjacent to each other, but not in a side-by-side relationship. SMR has no real response to this diagonal example.

The extrinsic evidence further supports Magna Mirror's argument that the plain language does not include SMR's limitation. *See Adjacent*, AMERICAN HERITAGE DICTIONARY OF THE

ENGLISH LANGUAGE 21 (4th ed. 2000) ("close to; lying near" and "next to; adjoining") and *Side,* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1617 (4th ed. 2000) (defining side by side as "next to each other; close together"); *Adjacent,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (1976) ("to lie near; border on" and "no distant or far off : nearby but not touching") and *Side by Side,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (1976) ("standing or situated next to one another"). Courts constructing "adjacent" often provide similar definitions. *See, e.g.*, *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1348-49 (Fed. Cir. 2005) (construing "adjacent" as "not distant"). None of these definitions contain or supports SMR's limitation to one and only one side. And even if there is some overlap in the claim terms, that does not warrant reading in a limitation that is not supported by the specification. *See L.A. Biomedical Research Inst. v. Eli Lilly & Co.* 849 F.3d 1049, 1064 (Fed. Cir. 2017) (noting that an overlap in two limitations "does not justify importing a . . . limitation into the claims where such a limitation has no support in the specification or the prosecution history.").

Indeed the specification of the patent is consistent with Magna Mirrors' approach and inconsistent with SMR's proposed construction. The '843 patent, for example, describes the potential arrangements of the primary and auxiliary mirrors through "various arrangements of multiradius reflective element 155 relative to its adjacent plano reflective element 150 (with demarcation element 165 disposed at their joint). ('843 Patent at 12:4-6; ECF No. 169-1, PageID.9091). The two figures below, 13B and 13E, are the preferred embodiments.



FIG. 13B



FIG. 13E

(ECF No. 169-1, PageID.9077-9078). They are preferred because "[i]n general, the location of the multiradius element in the outboard, upper portion of the plano-multiradius reflective element assembly . . . allows the plano portion [to] provide desired rearward field of view along the side of the vehicle."). (*Id.* at 12:17-22; *id.* at PageID.9091).

SMR does not dispute that its construction would exclude one of the two preferred embodiments, Fig. 13E, but it argues that it is the location of the auxiliary mirror that leads to the stated benefit, not the number of sides, and that its construction does include Fig. 13B, which encompasses this benefit. Accordingly SMR contends its construction is entirely consistent with Federal Circuit authority whereas Magna Mirrors' attempt to cover all embodiments enjoys no basis in the law. (SMR's Br., ECF No. 170, PageID.9949-9950). The Court disagrees because

the Federal Circuit has repeatedly held that "[a] claim construction that excludes the preferred embodiment is rarely, if ever, correct." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.,* 616 F.3d 1283, 1290 (Fed. Cir. 2010). Indeed, "a claim construction that excludes a preferred embodiment . . . would require highly persuasive evidentiary support." *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1308 (Fed. Cir. 2003) (citations omitted). This is not one of those rare circumstances where a construction excluding a preferred embodiment is correct, especially since SMR's construction is not supported by "highly persuasive evidence." Here, SMR mainly contends that Magna Mirrors' expert declaration of what a person of ordinary skill in the art would understand the claim term to mean is conclusory and that the Court should follow the lead of other courts that have rejected the expert's testimony. (SMR's Resp. Br., ECF No. 180, PageID.10268-10269). The Court does not need Magna Mirrors' expert to reject SMR's construction. Moreover, an argument to reject a party's expert statement does not amount to highly persuasive evidence for SMR's construction. In contrast, the Magna expert statement is consistent with the language of the claim and adds a contextual limitation based on after market facts that SMR does not dispute.

The Court therefore adopts Magna Mirrors' proposed construction of the term.

   2. *"a bracket fixedly secured to the motor vehicle"*

The parties propose the following constructions of the phrase "a bracket fixedly secured to the motor vehicle" as it appears in three claims of the '534 and '642 patents.

| CLAIM TERM | ASSERTED CLAIMS | MAGNA MIRRORS' PROPOSED CLAIM CONSTRUMTION | SMR'S PROPOSED CLAIM CONSTRUCTION |
|---|---|---|---|
| "a bracket fixedly secured to the motor vehicle" | '534 patent claim 20; '642 patent claims 10, 11 | Plain Meaning | A bracket attached to the motor vehicle in a stationary position, i.e., that is not foldable. |

The threshold question is whether the term needs construction at all. Magna Mirrors argues that no construction is required because "[a] jury can understand this requirement from the plain language of the claim term itself, without further elaboration from the Court." (Magna Mirrors' Br., ECF No. 167, PageID.9000). Consequently Magna Mirrors does not propose a claim construction. SMR argues a construction is necessary given the disagreement. (SMR's Br., ECF 170, PageID.9951).

"In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (citing *Phillips*, 415 F.3d at 1312-13). "When the parties raise an actual dispute regarding the proper scope of . . . [a] claim[]. The court, not the jury, must resolve the dispute." *Id.* "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id.* at 1361; *see also Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314 (2016). In *Eon*, the appellate court found that the trial court erred by declining to construe the terms 'portable' and 'mobile' and instructing the jury to give the terms their plain and ordinary meaning. *Eon*, 815 F.3d at 1318-1320. The appellate court emphasized that the parties disputed the scope of the claim terms and that it was error for the district court to leave the question of claim scope unanswered and for the jury to decide. *Id.* at 1319.

The disagreement over this claim language is whether the claim term excludes foldable mirrors even when attached to a vehicle by some kind of bracket. SMR asserts that the "patents-in-suit expressly distinguish between brackets that cannot fold . . . and . . . brackets that do fold

inwards." (SMR's Br., ECF No. 170, PageID.9951). SMR therefore argues for a narrower construction, and relies on a number of references in the specification for support. Magna Mirrors argues that the portions of the specification relied on by SMR are inapposite, and that SMR's construction runs counter to what a person of ordinary skill in the art would understand the claim language to mean. (Magna Mirrors' Br., ECF No. 167, PageID.9001). According to Magna Mirrors, the claim term simply means the overall mirror assembly—whether foldable or not—is attached to the car with a fixed bracket.

The specification of the '750 patent (the language SMR relies on) provides that "[t]he exterior sideview mirror assembly . . . can be **a fixedly attached** exterior sideview mirror assembly, a **break-away** exterior sideview mirror assembly and a **powerfold** exterior sideview mirror assembly[.]" ('750 Patent at 12:58-64; ECF No. 169-9, PageID.9412) (emphasis added). Later the specification says that "[t]hough illustrated as a fixed mounting arrangement, it should be understood that mirror system 410, like the previous embodiments, may comprise a **break-away** mirror system or a **powerfold** mirror system." ('750 Patent at 21:50-55; ECF No. 169-9, PageID.9417) (emphasis added). From this, SMR asserts that the specification reveals a distinction between a fixedly attached or fixed mounting arrangement and break-away or folding mirror systems, (SMR's Br., ECF No. 170, PageID.9952), and that where, as here, "a specification expressly contrasts a claim term with its alternatives, the construction of that term should exclude the alternatives." (SMR's Br., ECF No. 170, PageID.9952 (citing *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 2003 F.3d 795, 806 (Fed. Cir. 1999)).

The Court finds the plain and ordinary meaning sufficient and further determines the specification does not justify departing from that construction in the way SMR proposes. The problem with SMR's argument in favor of construction is that the above passages of the

specification appear to be referring to the mirror systems' mounting arrangement rather than the bracket attaching the whole system—of whatever type—to the vehicle. The Court is persuaded that the mirror system is a separate and independent object from a bracket, and for that reason the *Vivid Technologies* case is distinguishable. Nothing in the language quoted by SMR refers to a bracket, and a person of ordinary skill in the art would understand that the mirror systems' mounting arrangements—fixedly attached, breakaway, and powerfold—all have a bracket that is fixedly secured to the side of a vehicle. To be sure '[a] court may examine the specification to determine whether the patentee intended a special definition for a claim term or whether the patentee limited the scope of the claim by intentional disclaimer or disavowal." *Kingspan Insulated Panels Inc. v. Centria GP*, No. 1-15-cv-1023, 2018 WL 1256559, at *6 (W.D. Mich. Mar. 12, 2018) (citing *Phillips*, 415 F.3d at 1316). But nothing in the claim language nor the specification indicates that the patentee intended that the brackets at issue be part and parcel of the mirror systems. Given that brackets are not included in the description of the mirror assembly in the specification, no construction is needed beyond the plain and ordinary meaning.

   *3. "Non-Plano Curved Mirror Element"*

The parties propose the following construction of the term "non-plano curved mirror element as it appears in the cited asserted claims:

| CLAIM TERM | ASSERTED CLAIMS | MAGNA MIRRORS' PROPOSED CLAIM CONSTRUMTION | SMR'S PROPOSED CLAIM CONSTRUCTION |
|---|---|---|---|
| "non-plano curved mirror element" | '047 patent claims 16, 19, 25, 26, 27, 33, 35, 39;<br>'882 patent claims 3, 18, 20;<br>'750 patent claims 8, 14, 25 | A curved mirror element that is not substantially plano (i.e., flat) on its front or rear surfaces. | A mirror element that is not entirely planar and has a curve. |

The parties disagree on the meaning of "non-plano curved mirror element." Magna Mirrors argues that the claim term requires that the auxiliary mirror element "be 'not substantially plano (i.e. flat) on its front or rear surfaces.'" (Magna Mirrors' Br., ECF No. 167, PageID.8997). On the other hand SMR argues for a construction stating "a non-plano curved mirror element' [that] has a curve (or is curved) and is not entirely (or not substantially plano)." (SMR's Br., ECF No. 170, PageID.9954). The basic difference is whether the non-plano curved element can have any flat surface at all. Magna says it cannot. SMR says it can. Graphically speaking, the parties disagree over whether the middle illustration below is within the patent claim, but agree that the left illustration is not, and that the right illustration is.



(*See* ECF No. 197-1, PageID.11210). SMR asserts that its construction is consistent with the plain meaning of the term as well as the prosecution history, while Magna's construction improperly narrows the term. Magna Mirrors disagrees and avers that SMR improperly broadens the term with no basis in the intrinsic or extrinsic evidence.

The Court adopts Magna Mirrors' construction because it is more consistent with claim construction principles and the intrinsic record. It is well known that a "claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). Here, because the claim language uses the term "non-plano" as well as "curve[]" the Court presumes that the two terms have different

meanings. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of . . . different terms in the claims connotes different meanings."). SMR's construction fails to give meaning to both "non-plano" and "curve[]". There are two reasons for this. First, there are other claims that only require that the auxiliary mirror have a "curvature" and those claims contain no language relating to a "non-plano" requirement. *See, e.g.*, '843 Patent at 28:7-8; ECF No. 169-1, PageID.9099) ("a separate auxiliary reflective element having a curvature[.]"). Accordingly, non-plano must mean more than simply having a curve.

Second, the extrinsic evidence demonstrates that the construction that SMR favors—which would read on the prior art—is defined by a term not found in claim language or the specification. That term is "planoconcave" or "plano-concave." *See, e.g., Planoconcave,* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1343 (4th ed. 2000) (defining the term as "[f]lat on one side and concave on the other"). While not dispositive in its own right, the fact that a term exists that encapsulates SMR's construction and that could have, but was not, included in the claim term, indicates that non-plano is something different than SMR's construction. The Court is persuaded that a person of ordinary skill in the art would understand "non-plano" mirror element to have different optical properties than a planoconcave mirror element. In the same vein, the extrinsic evidence teaches that the prefix "non" is "not", the "reverse of" and the "absence of". *Non*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1535 (1976). SMR's instruction, in contrast, permits the presence of a plano auxiliary mirror element as long as a curve is also present.

SMR principally relies on the prosecution history of the '750 patent to support its proposed construction. (SMR's Br., ECF No. 170, PageID.9954-9955). In the prosecution of that patent,

the examiner initially rejected those claims that recited a "main non-plano curved mirror element", finding "no enablement or support" in the specification for those claims. (ECF No. 183-7, PageID.10529-10530). Magna Mirrors responded to the examiner and submitted that the claims should be allowed by stating, in relevant part:

The present application and its priority filings, including the parent patent application (Serial No. 10/709,434), clearly discloses a main non-plano curved mirror element. For example, the reflective element 12 is disclosed as having a curved main portion, such as is clearly shown in FIG. 2 (reproduced at right), where the exterior surface 18b comprises a less curved or substantially flat inboard portion or surface 18c and a more curved outboard portion or surface 18d, as discussed below. Moreover, the specification (see paragraph [0051]) describes the plano element 150 as *preferably* comprising a flat reflector-coated glass substrate having unit magnification, and thus discloses that the element 150 may optionally be a non-flat reflector-coated glass substrate having non-unit magnification.



FIG. 2

(ECF No. 67-2, PageID.3838).

SMR contends that Magna Mirrors "represented to the Patent Office that a 'reflective element' with a 'substantially flat' portion and a 'more curved' portion constitutes a 'non-plano curved mirror element.'" (SMR's Br., ECF No. 170, PageID.9955). This runs directly counter, SMR says, to Magna's present construction that requires the auxiliary mirror surfaces to be "not substantially plano." (SMR's Resp. Br., ECF No. 180, PageID.10275).

Generally "[t]he patentee is held to what he declares during the prosecution of his patent." *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007). And the Court recognizes, as SMR points out, that "[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Southwall Techs., Inc. v.*

*Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). This doctrine "promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1324 (Fed. Cir. 2003) (*citing Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1347 (Fed.Cir.1998)). However, courts have declined to apply the doctrine where there is ambiguity, since an ambiguity will not advance the policy underlying the doctrine. *Cf. SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005) ("There is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term." (citation omitted)).

Magna Mirrors clearly used the term "non-plano curved mirror element" during the patent prosecution, but the statements highlighted by SMR were made with respect to the main mirror, and not the auxiliary mirror at issue in this claim term. This ambiguity precludes application of the doctrine. This is not a case where Magna Mirrors took a position during patent prosecution that is directly counter to its present position. Accordingly, prosecution history does not clearly support SMR's construction, and Magna Mirrors' construction does not conflict with the intrinsic record. The Court adopts Magna Mirror's construction.

4. *"Backing Plate"*

The parties propose the following constructions of the term "backing plate" as it appears

in the cited asserted claims:

| CLAIM TERM | ASSERTED CLAIMS | MAGNA MIRRORS' PROPOSED CLAIM CONSTRUMTION | SMR'S PROPOSED CLAIM CONSTRUCTION |
|---|---|---|---|
| "backing plate" | '843 patent claims 15, 33; '244 patent claims 24, 26; '077 patent claims 22, 24, 27; '642 patent claims 10, 11; '047 patent claims 16, 19, 25, 26, 27, 33, 35, 39; '882 patent claims 3, 18, 20; '762 patent claims 8, 15; '750 patent claims 8, 14, 25 | A rigid structure that supports the rear surfaces of the [plano reflective element and auxiliary reflective element / primary mirror and spotting mirror / main plano mirror element and auxiliary non-plano curved mirror element]. | Support member formed as a single element on which mirrors are mounted. |

The parties disagree on two main points with respect to the claim term "backing plate."

The first disagreement is whether the backing plate must be "formed as a single element." SMR

reasons that it must, and that this construction is supported by the plain language of the patent and

by Magna Mirrors' presentation during the January 31, 2018 technology tutorial. It contends that

Magna Mirrors' construction is overly broad by leaving this limitation out. (SRM's Br., ECF No.

170, PageID.9956). Magna Mirrors counters that SMR's construction is redundant, since a number

of the claims already expressly contain a "single element" requirement. The second disagreement

is whether the "backing plate" must be rigid. Magna Mirrors avers that it must be under the plain

meaning of the word "plate," as well as under certain details within the specification. (Magna

Mirrors' Br., ECF No. 167, PageID.9013). It contends that SMR's construction that lacks a rigidity

requirement is overly broad, and is an attempt to sweep in prior art where the primarily and auxiliary mirror elements are connected via a flexible hinge or bellows. SMR responds that Magna Mirrors unnecessarily reads limitations from the specification into the claim. (SMR's Resp. Br., ECF No. 180, PageID.10276). The Court is not satisfied entirely with either party's construction.

With regard to the first dispute, nothing in the language of the claim itself requires a "backing plate" formed as a single element. To the contrary, some claims recite the "single element" as a separate limitation, and others do not. This suggests that a simple reference to "backing plate" does not require a single element. The specification of the '750 patent does recite that the "[b]acking plate element 160 **is formed** as a single element to which elements 160 and 155 are separately attached." ('750 Patent at 9:26-28; ECF No. 169-9, PageID.9411). But importing a limitation from the specification that is not in the claim language itself is the cardinal sin of claim construction. *Phillips*, 415 F.3d at 1320. The Court discerns no basis on which to read a single element requirement into the claim term "backing plate."

By the same token, there is nothing in the plain language that requires the backing plate be rigid either. The specification is also agnostic on the issue. It provides that:

> Backing plate element 160 is **preferably** a rigid polymeric substrate capable of supporting plano element 50 and multi-radius element 155.

('843 Patent at 8:21-22, ECF No. 169-1, PageID.9089) (emphasis added). A preference for rigidity is not the same thing as a requirement. A "court must take care in its analysis, when locating in the written description the context for a disputed term, not to import a limitation from that written description. It must use the written description for enlightenment and not to read a limitation from the specification." *See Warrior lacrosse, Inc. v. STX, LLC*, No. 04-70363, at *18 (E.D. Mich. June

2, 2005) (quoting *Playtex Products, Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005)). The Court declines to do so here.

Magna Mirrors' arguments to the contrary on this issue are unavailing. First, it contends that a rigidity requirement is at least implicit in the specification because the specification repeatedly describes the auxiliary and primary reflective elements on the backing plates as being positioned "at an angle" rather than merely "capable of being placed at an angle." (Magna Mirrors' Br., ECF No. 167, PageID.9013). For example in referencing the below figure the '843 patent states: "Note that section AA to BB of backing plate element 160 is angled to section BB to CC." ('843 Patent at 10:19-20, ECF No. 169-1, PageID.9090).



FIG. 14

('843 Patent, ECF No. 169-1, PageID.9079). Magna Mirrors asserts its construction is consistent with the purpose of the invention while a flexible backing that permits an independent adjustment of the mirror would frustrate the invention's purpose of having an optimal field of view. But Magna Mirrors has not demonstrated why the primary and auxiliary mirror elements could not be placed at an angle on a non-rigid backing plate, or why the backing plate could not be angled. A backing plate could be flexible, for example, yet have an original and primary angled position.

Magna Mirrors' extrinsic evidence argument fares no better.  There is no consensus in the extrinsic evidence that the plain meaning of "plate" includes rigidity.  Many an individual, for example, has filled a plate at a social function picnic only to find rigidity sorely lacking.  And while Magna Mirrors has found a dictionary definition of "plate" that includes rigidity, other dictionaries do not include such a requirement.  *See, e.g.,*, *Plate*, THE RANDOMHOUSE COLLEGE DICTIONARY 1017 (1982) ("a thin, flat sheet or piece of metal or other material, esp. of uniform thickness."); *Plate*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1734 (1976) ("a smooth usu. nearly flat and relatively thin piece of metal or other material.").

The Court finds flaws in some aspect of each party's construction.  The Court adopts the following construction for "backing plate": a support member for mounting the rear surfaces of the reflective elements.

*5. Indefiniteness*

Under the Patent Act, a patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which inventor or joint inventor regards as the invention." 35 U.S.C. § 112(b) (2017).  The Supreme Court has held that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 135 S. Ct. 2120, 2124 (2014).  "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Id.*  The Federal Circuit recognizes that "[t]he claims, when read in light of the specification and the prosecution history, must provide objective boundaries

for those of skill in the art." *Interval licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

SMR challenges the remaining claim terms as indefinite. The Court addresses these claims in turn.

### A. *"field of view"*

| CLAIM TERM | ASSERTED CLAIMS | MAGNA MIRRORS' PROPOSED CLAIM CONSTRUMTION | SMR'S PROPOSED CLAIM CONSTRUCTION |
|---|---|---|---|
| "field of view" | '843 patent claims 15, 33; '244 patent claims 24, 26; '077 patent claims 22, 24, 27; '534 patent claim 20; '642 patent claims 10, 11; '047 patent claims 16, 19, 25, 26, 27, 33, 35, 39; '882 patent claims 3, 18, 20; '762 patent claims 8, 15; '750 patent claims 8, 14, 25 | The observable area viewable through a reflective element or mirror. | Indefinite. |

SMR contends that the claim term "field of view" is indefinite because the patents-in-suit fail to provide the information necessary to teach a person of ordinary skill in the art whether a field of view falls within the scope of claims. Namely, SMR contends the patents fail to teach the driver's position and the mirror position which are necessary to calculate the field of view with any precision. Lacking these variables, SMR says, a field of view could be calculated in multiple ways, some of which may, or may not, infringe on the patents-in-suit. (SMR's Br., ECF No. 170, PageID.9958). Magna Mirrors disagrees that the claim term is indefinite because the specification

and the C.F.R. teaches a person of ordinary skill in the art how to measure the claimed fields of view and, furthermore, person-to-person variability does not generate indefiniteness. (Magna Mirrors' Br., ECF No. 167, PageID.9002-9003).

Read in context, "field of view" has a definite meaning that is readily understood by a person of ordinary skill in the art. The phrase reasonably informs those skilled in the art of what is being claimed and how to determine infringement, considering the overall context of the specification and claim language. Here, "field of view" is a term to describe what a driver will see when looking in a sideview mirror, and the patents-in-suit provide a standard for measuring what the driver will see. For example, the patents explain:

> Preferably, the plano element comprises a reflector surface area of a size sufficient, when mounted as part of a plano-multiradius reflective element assembly in a driver-side exterior sideview mirror assembly on an automobile, to provide the driver of the automobile a view of a level road surface extending to the horizon from a line, perpendicular to a longitudinal plane tangent to the driver's side of the automobile at the widest point, extending 8 feet out from the tangent plane 35 feet behind the drivers' eyes (at a nominal location appropriate for any 95th percentile male driver or at the driver's eye reference points established in Federal Motor Vehicle Standard No. 104), with the driver seated in the driver's seat and with the driver's seat in the rearmost position.

('843 Patent at 12:60-13:5, ECF No. 169-1, PageID.9091-9092). In the Court's judgment, the specification provides sufficient context to provide meaning to the phrase such that a person of ordinary skill in the art would be able to understand this phrase and identify the specifics of the invention. Indeed the FMVSS referenced in the '843 patent is referenced throughout the asserted patents for eye points. To be sure, the field of view will vary based on all the factors identified by SMR, but the Court is satisfied the patent teaches how to determine the field and, more importantly, to determine infringement. The Court adopts Magna Mirror's construction.

*B.  "Blind Spot"*

| CLAIM TERM | ASSERTED CLAIMS | MAGNA MIRRORS' PROPOSED CLAIM CONSTRUMTION | SMR'S PROPOSED CLAIM CONSTRUCTION |
|---|---|---|---|
| "blind spot" | '843 patent claims 15, 33;<br>'244 patent claims 24, 26;<br>'077 patent claims 22, 24, 27;<br>'047 patent claims 19, 25, 26, 27;<br>'762 patent claims 8, 15;<br>'750 patent claims 8, 14, 25 | The area between the outside edge of the rearward field of view of the [plano reflective element / main plano mirror element] and the outer edge of the driver's peripheral vision. | Indefinite. |

"Blind spot" is not indefinite in context and the Court is persuaded that Magna Mirrors' construction is consistent with the ordinary meaning.  As already discussed, a person of ordinary skill in the art would understand from the patents how to determine infringement, based on the analysis above.  The overall context of the specification and claim language make the term sufficiently definite.

*C.  "wherein said spotting mirror is at an angle of at least about three degrees relative to the primary mirror"*

| CLAIM TERM | ASSERTED CLAIMS | MAGNA MIRRORS' PROPOSED CLAIM CONSTRUMTION | SMR'S PROPOSED CLAIM CONSTRUCTION |
|---|---|---|---|
| "wherein said spotting mirror is at an angle of at least about three degrees relative to the primary mirror" | '534 patent claim 20;<br>'642 patent claim 11 | The spotting mirror is in a fixed relationship with the primary mirror at an angle of at least about three degrees in any direction. | Indefinite. |

The claim term provides for a "spotting mirror" that is "at an angle of at least about three degrees relative to the primary mirror."  ('534 Patent at 30:28-29, ECF No. 169-4, PageID.9220).  Magna Mirrors argues that the term is not indefinite because a person of ordinary skill in the art

would understand that the spotting mirror needs to be at an angle of only about three degrees relative to the primary mirror, in any direction. (Magna Mirrors' Br., ECF No. 167, PageID.9015). SMR counters that a person of ordinary skill in the art would not know in which direction the mirror must be angled and, moreover, there are no boundaries in the intrinsic evidence for the claim. (SMR's Br., ECF No. 170, PageID.9663).

The claim term is not indefinite. The intrinsic evidence teaches that the spotter mirror must be at an angle of "at least about three degrees" in relation to the primary mirror. In other words, the term delineates the bounds of the invention. While the direction of the angle is not provided, the Court is not persuaded that this renders the term indefinite. Practical realities of physics constrain the possible angle measurements to a comprehensible amount. Though the range of measurements may be broad, it is well understood that "[b]readth is not indefiniteness." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005) (quoting *In re Gardner*, 57 C.C.P.A. 1207, 427 F.2d 786, 788 (CCPA 1970) (alterations in original)).

Accordingly the Court adopts Magna Mirrors' construction as consistent with the plain and ordinary meaning of the claim term.

## CONCLUSION

This Claim Construction Memorandum addresses only the limited patent terms the parties selected for construction at this time, hoping that this Court's construction would facilitate framing and resolution of the issues on dispositive motion practice or trial. The Court anticipates addressing any further claim construction issues in the context of dispositive motion practice, and preparation of the final pretrial order and jury instructions on any claims or defenses that go to trial.

**IT IS SO ORDERED.**


Dated:   December 22, 2018            /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE