UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAGNA MIRRORS OF AMERICA, INC.,

      Plaintiff,

                                  Case No. 1:17-cv-77

v.
                                  HON. JANE M. BECKERING

SAMVARDHANA MOTHERSON
REFLECTEC GROUP HOLDINGS
LIMITED, et al.,

      Defendants.

_____/

## OPINION

Plaintiff Magna Mirrors of America, Inc. ("Magna") initiated this patent case against Defendants SMR Automotive Systems USA, Inc. ("SMR USA"); SMR Automotive Mirrors UK Limited ("SMR UK"); SMR Automotive Mirrors Stuttgart GmbH ("SMR Stuttgart"); and SMR Automotive Vision Systems Mexico S.A. De C.V. ("SMR Mexico") (collectively, "SMR"). Magna alleged that blind spot mirror assemblies that SMR manufactured infringed claims in Magna's patents. However, a jury rendered a verdict in favor of SMR on December 15, 2022. The remaining issue of inequitable conduct was tried to the Court on December 15, 2022, and the parties subsequently filed proposed findings of fact and conclusions of law (ECF Nos. 756–757 & 761). In accordance with Federal Rule of Civil Procedure 52(a), this Opinion contains the Court's Findings of Fact and Conclusions of Law.[1]  For the reasons delineated herein, the Court determines that SMR has not carried its burden of proving inequitable conduct.

_____

[1] The Court has adopted, in most respects and without attribution, language proposed by one of the parties.  In all such instances, the Court adopts the party's proposed finding of fact or conclusion

## I.      INTRODUCTION

At issue is whether Magna engaged in inequitable conduct during the prosecution of three of the five Asserted Patents, rendering unenforceable its claims of those patents and the claims of the remaining two Asserted Patents.  As the bases for its inequitable-conduct defense, SMR argues that Niall Lynam, Ph.D., Magna's Senior Vice President (SVP) and Chief Technical Officer (CTO), (1) submitted false declarations to the Patent and Trademark Office (PTO) during prosecution of three of the Asserted Patents, and (2) failed to identify the 2001 Dodge Ram Trailer Towing Mirror during prosecution of the Asserted Patents as material, non-cumulative prior art. As part of this Court's pretrial process, the parties submitted a set of uncontroverted facts before the bench trial (ECF No. 620 at PageID.24481–24485), and these facts form a substantial rendition of the core relevant events in this case.  Further, the Court observes that the parties' remaining proposed findings of fact are mostly duplicative of each other, resulting in the primary task before the Court to draw reasonable inferences from these facts, as well as the legal import of the facts.

## II.      FINDINGS OF FACT

### A.  Overview

1.   Magna and SMR (and their predecessors) have been competitors in the North America exterior mirror market since at least 2003.  (Jury Trial Trs., ECF No. 699 at PageID.27116 (Cezary Zawadzinski), ECF No. 705 at PageID.27596 & 27640 (Kevin Arst), and ECF No. 724 at PageID.28005–28006 (Ronald Raymo).)

2.   The Asserted Patents are the following five United States Patents selected for trial:

   a.   No. 7,934,843 ("the ′843 patent," Plaintiff's Trial Exhibit [PTX] 001), entitled "Exterior Sideview Mirror System";

---

of law as the Court's own, based upon its review of the evidence and the law.  To the extent that any of the Court's findings of fact may be considered conclusions of law or vice versa, they should be considered as such.

    b.   No. 8,267,534 ("the ′534 patent," PTX004), entitled "Exterior Rearview Mirror Assembly";

    c.   No. 8,591,047 ("the ′047 patent," PTX006), entitled "Exterior Sideview Mirror Assembly";

    d.   No. 8,783,882 ("the ′882 patent," PTX007), entitled "Extended Field of View Exterior Mirror Element for Vehicle"; and

    e.   No. 9,694,750, entitled "Extended Field of View Exterior Mirror Element for Vehicle" ("the ′750 patent," PTX009).

3.   The "Asserted Claims" are

    a.   claim 15 of the ′843 patent,
    b.   claim 20 of the ′534 patent,
    c.   claim 27 of the ′047 patent,
    d.   claim 20 of ′882 patent, and
    e.   claim 8 of the ′750 patent.  (Jury Trial Tr., ECF No. 686 at PageID.26352.)

4.   Each Asserted Patent is directed to an exterior sideview mirror assembly containing a primary mirror and an auxiliary or "spotter" mirror targeted at reducing a driver's "blind spot." (PTX001 at Abstract; PTX004 at Abstract; PTX006 at Abstract; PTX007 at Abstract; PTX009 at Abstract; Jury Trial Tr., ECF No. 686 at PageID.26446 (Lynam).)

5.   Dr. Lynam, Magna's SVP and CTO, is the sole named inventor on each Asserted Patent. (PTX001-002; PTX004-002; PTX006-002; PTX007-002; PTX009-002; Jury Trial Tr., ECF No. 686 at PageID.26420 (Lynam); Bench Trial Tr., ECF No. 743 at PageID.29287 (Lynam).)

6.   The Asserted Patents are related and share a common specification.  (Jury Trial Tr., ECF No. 695 at PageID.26836 & 26839–26840 (Lynam); PTX001-002; PTX004-002; PTX006-002; PTX007-002 to -003; PTX009-002 to -003.)

7.   Each Asserted Patent is a continuation of U.S. Patent Application No. 12/851,045 ("the ′045 application"), which is the application that led to issuance of the first Asserted Patent, the ′843

patent.  (Jury Trial Tr., ECF No. at 695 at PageID.26838–26840 (Lynam); PTX001-002; PTX004-002; PTX006-002; PTX007-002 to -003; PTX009-002 to -003.)

8.  Each Asserted Patent is entitled to a priority date of May 20, 2003.  (Uncontroverted Facts ¶ 12; Jury Trial Tr., ECF No. 695 at PageID.26840 (Lynam).)

## B.  The 2001 Dodge Ram Mirror

9.  Magna and/or its affiliate manufactured and sold an exterior sideview automotive mirror product or assembly with a primary reflective element and a separate auxiliary reflective element intended to be installed on a vehicle for the 2001 Dodge Ram (the "2001 Dodge Ram Mirror." (Jury Trial Tr., ECF No. 731 at PageID.28284–28286 (Tuviah Schlesinger); Defendants' Physical Trial Exhibit [DPX] 2; Defendants' Trial Exhibit [DX] 001.0034; DX-465.0005.)

10.  The exterior rearview mirror for the 2001 Dodge Ram included a primary flat mirror and "[a] small blind spot mirror is integrated onto the main mirror surface."  (DX-001.0034; Jury Trial Tr., ECF No. 731 at PageID.28280 (Schlesinger).)

11.  Magna, its affiliate, and/or an Original Equipment Manufacturer (OEM) customer publicly disclosed the 2001 Dodge Ram Mirror at least one year before May 20, 2003, i.e., the priority date of the Asserted Patents.   (Jury Trial Tr., ECF No. 731 at PageID.28285–28286 (Schlesinger); DX-465.0013.)

12.  Magna and/or its affiliate offered the 2001 Dodge Ram Mirror for sale in the United States at least one year before May 20, 2003.  (Jury Trial Tr., ECF No. 731 at PageID.28284–28286 (Schlesinger); DX-465.0009.)

13.  Magna and/or its affiliate sold the 2001 Dodge Ram Mirror in the United States at least one year before May 20, 2003.  (DX-465.0005.)

14. Last, Dr. Lynam testified that he knew about the 2001 Dodge Ram Mirror before filing the applications that led to the issuance of each Asserted Patent.  (Bench Trial Tr., ECF No. 743 at PageID.29266 & 29278.)

**C.**  **2000–2007:  The Two-Piece Mirror Family** (The Lynam ′451, ′712 & ′294 Patents)

15. Dr. Lynam testified that in the summer of 1999, he began developing two-element blind spot mirror assembly inventions designed to solve the problem of viewing objects in a driver's blind spot. (Jury Trial Tr., ECF No. 686 at PageID.26430–26434.)

16. Between January 2000 and 2004, Dr. Lynam filed patent applications directed to an exterior sideview mirror assembly containing two separate pieces of glass: a primary mirror and a spotter mirror ("the Two-Piece Mirror Family").  (Bench Trial Tr., ECF No. 743 at PageID.29246–29247 (Lynam).)

17. The Two-Piece Mirror Family is composed of the following three issued United States Patents:

    a. No. 6,522,451 ("the ′451 patent," DX-20),
    b. No. 6,717,712 ("the ′712 patent," DX-18), and
    c. No. 7,167,294 ("the ′294 patent," DX-19).  (Bench Trial Tr., ECF No. 743 at PageID.29246–29247 (Lynam).)

18. Magna has not alleged that SMR's bridge spotter mirrors infringe any claim of the ′451, ′712, or ′294 patents.  (Jury Trial Tr., ECF No. 686 at PageID.26352, 26471–26473 & 26475 (Lynam).)

19. On January 6, 2000, Dr. Lynam (through his attorney) filed U.S. Patent Application No. 09/478,315 ("the ′315 application") for blind spot mirror assemblies, which issued as U.S. Patent No. 6,522,451 ("the ′451 patent") on February 18, 2003.  (Uncontroverted Facts ¶ 1; PTX124-001.)

    a. Dr. Lynam is the sole inventor listed on the ′451 patent.  (Uncontroverted Facts ¶ 2.)

5

    b.  The ′451 patent expired on February 18, 2015 because Magna did not pay the requisite maintenance fees.   (Uncontroverted Facts ¶ 3; Jury Trial Tr., ECF No. 686 at PageID.26473 (Lynam).)

    c.  Notably, the ′451 patent does not disclose a "Thin Glass Element," which is defined *infra* at ¶ 36(c).  (Bench Trial Tr., ECF No. 743 at PageID.29222 (Schlesinger) & 29255 (Lynam).)

20. On December 20, 2000, Dr. Lynam (through his attorney) filed a continuation-in-part of the ′451 patent, which issued on April 6, 2004 as U.S. Patent No. 6,717,712 ("the ′712 patent"). (Uncontroverted Facts ¶ 4; PTX125-001.)

    a.  The ′712 patent names three inventors: Dr. Lynam, John O. Lindahl, and Hahns Yoachim Fuchs.  (Uncontroverted Facts ¶ 6.)

    b.  The application that led to the ′712 patent was published on June 13, 2002 as U.S. Patent Publication No. 2002/0072026 (the "Lynam ′026 publication"). (Uncontroverted Facts ¶ 5; PTX504-001.)

    c.  Dr. Lynam testified that the ′712 patent discloses further details regarding blind spot mirror assemblies that he invented, including additional detail regarding "angling" and overlapping fields of view.  (Jury Trial Tr., ECF No. 686 at PageID.26442.)

    d.  However, the ′712 patent expired on April 6, 2016 because Magna did not pay the requisite maintenance fees.  (Uncontroverted Facts ¶ 7; Jury Trial Tr., ECF No. 686 at PageID.26475–26476 (Lynam).)

21. On April 2, 2004, Dr. Lynam (through his attorney) filed a continuation of the ′712 patent, which issued on January 23, 2007 as U.S. Patent No. 7,167,294 ("the ′294 patent"). (Uncontroverted Facts ¶ 8; PTX126-001.)

    a.  The ′294 patent also named Dr. Lynam, Lindahl, and Fuchs as the three inventors. (Uncontroverted Facts ¶ 9.)

    b.  Dr. Lynam testified that Lindahl and Fuchs contributed the "frame element" to the invention described in the ′712 and ′294 patents.  (Jury Trial Tr., ECF No. 686 at PageID.26442–26443; Bench Trial Tr., ECF No. 743 at PageID.29287.)

22. Magna did not file any further continuation, continuation-in-part, or divisional applications of the ′294 patent.  The Two-Piece Mirror Patent Family therefore closed after the ′294 patent issued on January 23, 2007.  (Bench Trial Tr., ECF No. 743 at PageID.29247 (Lynam).)

### D.  <u>The One-Piece Mirror Family</u> (The Lynam ′756 & ′154 Patents)

23. On May 20, 2003, Dr. Lynam (through his attorney) filed United States Provisional Application No. 60/471,872 ("the ′872 provisional application").  (Uncontroverted Facts ¶ 10; PTX502-001.)

    a.  The named inventor of the ′872 provisional application is Dr. Lynam.  (Uncontroverted Facts ¶ 13.)

    b.  The ′872 provisional application incorporates by reference the entirety of the ′451 and ′712 patents, patents from the two-piece mirror family.  (Uncontroverted Facts ¶ 14.)

    c.  Dr. Lynam testified that the ′872 provisional application discloses, among other things, an inventive composition—"polymeric thin glass"—for a mirror, although Dr. Lynam conceded that the words "thin glass" are not in the ′872 provisional application.  (Bench Trial Tr., ECF No. 743 at PageID.29281–29282.)

    d.  Each of the Asserted Patents claim priority to the ′872 provisional application. (Uncontroverted Facts ¶ 11.)

24. Each of the Asserted Patents are entitled to a priority date of May 20, 2003 based on the filing date of the ′872 provisional application.  (Uncontroverted Facts ¶ 12; Jury Trial Tr., ECF No. 695 at PageID.26840 (Lynam).).

25.  On May 5, 2004, Dr. Lynam (through his attorney) filed Application No. 10/709,434 ("the ′434 application"), which issued as U.S. Patent No. 7,420,756 ("the ′756 patent") on September 2, 2008, and claims priority to the ′872 provisional application.  (Uncontroverted Facts ¶ 16.)

26. On August 25, 2008, Dr. Lynam (through his attorney) filed Application No. 12/197,666 ("the ′666 application"), which issued as U.S. Patent No. 7,842,154 ("the ′154 patent") on November 30, 2010.  (Uncontroverted Facts ¶ 17.)

   a.  The ′666 application is a division of the ′434 application.  (Uncontroverted Facts ¶ 18.)

   b.  The sole named inventor on the ′154 patent is Dr. Lynam.  (DX-197.0001.)

27.  Magna has not alleged that SMR's bridge spotter mirrors infringe any claim of the ′756 or ′154 patents.  (Jury Trial Tr., ECF No. 686 at PageID.26352.)

**E.  <u>2008:  SMR's Bridge Spotter Mirror Released</u> (The Sinelli ′469 Patent)**

28. On January 3, 2008, SMR filed United States Patent Application No. 11/968,989, which published as United States Patent Publication No. 2009/0174959 (the "Sinelli publication"). (Uncontroverted Facts ¶ 21.)

   a.  The Sinelli publication is directed to an exterior rearview automotive mirror that includes a two-piece spotter mirror assembly.  (Uncontroverted Facts ¶ 20.)

29. In late 2008, SMR released its two-piece bridge spotter mirror, which is the mirror accused of infringement in this case.  (Jury Trial Tr., ECF No. 705 at PageID.27404–27406 (Gary Sinelli), & 27537 (Michael Nranian); DX-414.0001; DX-416.0001.)

30. SMR began supplying bridge spotters for the General Motors Lambda program in April 2009 (Jury Trial Trs., ECF No. 705 at PageID.27414-27416 (Sinelli); ECF No. 724 at PageID.28053–28057 (Shannon Plewinski); PTX493-008; PTX493-010; PTX493-019; DX-83.0001.)

31. SMR supplied bridge spotters for the Ford Econoline program no later than March 2009.  (Jury Trial Tr., ECF No. 705 at PageID.27406 (Sinelli) & 27537 (Nranian); PTX001; DX-37.0001.)

32. Around July 2009, Dr. Lynam became aware of the Sinelli publication.  (Uncontroverted Facts ¶ 19.)

33. By June 2010, Dr. Lynam also became aware that SMR was supplying an outside mirror that included a two-piece bridge spotter mirror assembly into the United States outside mirror market.  (Jury Trial Trs., ECF No. 695 at PageID.26843 (Lynam), & ECF No. 686 at PageID.26470 (Lynam); Bench Trial Tr., ECF No. 743 at PageID.29245 (Lynam).)

34. As of June 2010, Magna had not yet began supplying "WideVue" mirrors, which is what Magna called its side-view mirrors with two reflective elements.  (Jury Trial Trs., ECF No. 686 at PageID.26443 (Lynam), ECF No. 695 at PageID.26906 (Michael Baur), ECF No. 705 at PageID.27535–27537 (Nranian), & ECF No. 705 at PageID.27658 (Arst); Bench Trial Tr., ECF No. 743 at PageID.29245 (Lynam).)

   a. The flat mirror and curved spotter mirror in Magna's WideVue product are held together by a plastic formed backplate that Dr. Lynam invented.  (Jury Trial Tr., ECF No. 686 at PageID.26443 (Lynam).)

   b. Magna first shipped a WideVue mirror in the second half of 2010 for the 2011 Ford Fiesta program.  (Jury Trial Trs., ECF No. 686 at PageID.26443 (Lynam); ECF No.

695 at PageID.26906 (Baur); ECF No. 705 at PageID.27535–27537 (Nranian) & 27658 (Arst).)

35. The Sinelli Publication issued as U.S. Patent No. 7,857,469 ("the Sinelli ′469 Patent") on December 28, 2010.  (Uncontroverted Facts ¶ 22.)

   a.  The ′469 patent is directed to a two-piece spotter mirror assembly.  (Uncontroverted Facts ¶¶ 19 & 20; Jury Trial Tr., ECF No. 699 at PageID.27220 (Paul Henion); PTX127-001 at Abstract; PTX127-002 at Fig. 1; PTX127-007, 4:19-37 (claim 1).)

   b.  The ′469 patent claims "[a]n exterior rearview mirror assembly for a motor vehicle" that comprises "a primary mirror" and "a spotting mirror."  (PTX127-001 at Abstract; PTX127-002 at Fig. 1; PTX127-007, 4:19-37 (claim 1).)

   c.  The ′469 patent was allowed over the Lynam ′451, ′712, and ′294 patents in Magna's Two-Piece Mirror Patent Family, which are cited on the face of the ′469 patent. (PTX127-0001.)

   d.  The ′469 patent named SMR employees Gary J. Sinelli, Paul R. Henion, Douglas J. Wilson, and Timothy Jayquas as inventors.  (PTX127-0001.)

   e.  When prosecuting the ′469 patent, neither SMR's engineers (including Henion and Sinelli) nor their counsel cited the Dodge Ram Mirror or the United States version of PCT International Publication No. WO 01/44013 ("Henion ′013"), which lists Henion as one of the inventors and which also discloses a trailer towing mirror.  Henion testified that his view at the time was that the Dodge Ram Mirror was simply different from the blind-zone mirror design they were claiming in their patent, in part because the Dodge Ram Mirror is a trailer-towing mirror.  (PTX127 (face); Jury Trial Tr., ECF No. 699 at PageID.27167–27170 (Henion).).

**F. August 2010–May 2016:  Prosecution of the Asserted Patents**

*(1) The '843 Patent*

36. On August 5, 2010, after becoming aware of SMR's bridge spotter mirrors, Dr. Lynam (through his attorney) filed U.S. Patent Application No. 12/851,045 ("the '045 application"), which later issued as the asserted U.S. Patent No. 7,934,843 ("the '843 patent").  (PTX 001-001).

   a. The '045 application is a continuation of the '666 application.  (Uncontroverted Facts ¶ 24.)

   b. Dr. Lynam testified that the claims of the '843 patent include the two-element blind spot mirror assemblies described in the '451 and '712 patents and "incorporate[] by reference" the "thin glass" limitations from the '872 provisional.  (Jury Trial Tr., ECF No. 686 at PageID.26444; Bench Trial Tr., ECF No. 743 at PageID.29281–29282.)

   c. Specifically, pending independent claims of the '045 application recited "wherein at least one of said plano reflective element and said auxiliary reflective element comprises one of (a) a glass substrate having a surface coated with a metallic reflector coating and (b) *a polymeric substrate having a thin glass element* applied to a surface thereof and with an opposing surface thereof having a reflecting layer applied thereto" (the "Thin Glass Element")  (PTX021 (emphasis added).)

37. Dr. Lynam acknowledged his "duty to disclose to the [Patent Office] all information which is known by [him] to be material to patentability" during prosecution of the '045 application.  (PTX021-012.)

38. On January 13, 2011, during prosecution of the '045 application, the Examiner rejected the pending claims, in pertinent part, as (1) not entitled to claim priority to the '872 provisional

application ("Priority Rejection"); and (2) anticipated by the Lynam ′026 publication ("Lynam ′026 Publication Rejection").  (Uncontroverted Facts ¶ 25.).

    a.  Specifically, the Examiner stated that Dr. Lynam had not shown entitlement to claim priority to the ′872 provisional application because the ′872 provisional application failed to provide adequate support for several features, including the "plano-auxiliary reflective element assembly."  (PTX021-1080.)

39. On January 19, 2011, Dr. Lynam (through his attorney) responded to the Examiner's Priority Rejection by explaining that the priority claim to the ′872 provisional application was appropriate due to the incorporation by reference of the ′451 and ′712 patents.  (Uncontroverted Facts ¶ 26.)

40. On January 19, 2011, Dr. Lynam (through his attorney) responded to the Examiner's Lynam ′026 Publication Rejection by submitting a sworn declaration pursuant to 37 C.F.R. § 1.131 ("the Rule 1.131 Declaration"). (Uncontroverted Facts ¶ 27.)

    a.  In relevant part, Dr. Lynam's declaration stated that "[p]rior to June 13, 2002, the inventor and Applicant conceived of the claimed invention of at least the independent claims as filed in the present application." [2]  (PTX021-1130.).

    b.  Dr. Lynam's declaration further stated that "[t]he invention of at least the independent claims of the present application was reduced to practice sometime prior to June 13, 2002." *Id.* at 1132.

---

[2] The ′026 publication was issued on June 13, 2002; thus, Dr. Lynam was contending that the ′026 publication was not disqualifying prior art.

    c. Dr. Lynam's declaration set forth the limitations of the independent claims, including the "metallic reflector coating" species, but made no reference to the "thin glass" species. *Id.*

41. Dr. Lynam repeatedly testified at trial that he reduced to practice the "thin glass" species of the independent claims of the ′045 patent application *after* June 13, 2002.  (Bench Trial Tr., ECF No. 743 at PageID.29255 & PageID.29284.)

42. Dr. Lynam testified that he "never thought" his declaration was telling the PTO that he had invented thin glass before June 13, 2002 (Bench Trial Tr., ECF No. 743 at PageID.29284.)

43. Both Dr. Lynam and SMR's technical expert, Toviah Schlesinger, Ph.D., testified that the Lynam ′026 publication did not disclose the optional "thin glass" species set forth in the ′045 patent application.  (Bench Trial Tr., ECF No. 743 at PageID.29240–29241 (Schlesinger) & PageID.29284 (Lynam).)

44. SMR's expert on Patent Office procedures, James Carmichael, testified that Dr. Lynam's declaration could overcome the Examiner's rejection by showing prior possession of "either the whole invention or something falling within the claims, such as a species of a claimed genus" that was disclosed by the Lynam ′026 publication identified by the Patent Examiner (Bench Trial Tr., ECF No. 743 at PageID.29308 & 29314–29315.)

45. After receiving the response, the Examiner allowed the ′045 application to issue as the ′843 patent on March 22, 2011.  (Uncontroverted Facts ¶ 28.)

    a. The Examiner stated that Dr. Lynam had "overcome the prior art rejection and questions regarding priority by filing a 37 CFR 1.131 affidavit," which "proves that Niall Lynam conceived or invented the subject matter disclosed in the patent application publication."  (PTX021-1222.)

### (2) The '534 Patent

46. On December 23, 2011, Dr. Lynam (through his attorney) filed U.S. Patent Application No. 13/336,018 ("the ′018 application"), which issued as U.S. Patent No. 8,267,534 ("the ′534 patent") on September 18, 2012.  (Uncontroverted Facts ¶ 29; PTX024-011; PTX 004.)

    a. The sole named inventor on the ′018 application is Dr. Lynam.  (Uncontroverted Facts ¶ 30.)

    b. The ′018 application is a continuation of U.S. Patent Application No. 12/911,274, which is a continuation of the ′045 application.  (Uncontroverted Facts ¶ 31.)

    c. Claim 1 the Lynam ′534 patent and claim 1 of the Sinelli ′469 Patent are word-for-word identical.  (Uncontroverted Facts ¶ 35.)

    d. Pending independent claims of the ′018 application included the Thin Glass Element, reciting "wherein at least one of said plano reflective element and said auxiliary reflective element comprises one of (a) a generally flat glass substrate having a surface coated with a metallic reflector coating and (b) a generally flat polymeric substrate having a thin glass element applied to a surface thereof and with an opposing surface thereof having a reflecting layer applied thereto."  (PTX024-083 to -088; PTX024-187 to -188.)

47. Dr. Lynam acknowledged his "duty to disclose to the [Patent Office] all information which is known by [him] to be material to patentability" during prosecution of the ′018 application.  (PTX024-014.)

48. On May 17, 2012, the Examiner issued an office action rejecting all pending claims of the ′018 application as anticipated by the Lynam ′026 publication.  (Uncontroverted Facts ¶ 32.)

   a. Specifically, the Examiner stated that "[t]he applied reference"—the Lynam ′026 publication—had a "common inventor" with the ′018 application and that the Lynam ′026 publication "constitutes prior art under 35 U.S.C. 102(e)." (PTX024-148.)

   b. The Examiner further stated that the rejections based on the Lynam ′026 publication under Section 102(e) "might be overcome either by a showing under 37 CFR 1.132 that any invention disclosed but not claimed in the reference was derived from the inventor of this application and is thus not the invention 'by another,' or by an appropriate showing under 37 CFR 1.131." *Id.*

49. On May 21, 2012, Dr. Lynam (through his attorney) responded to the Examiner's rejections based on the Lynam ′026 publication by submitting another sworn declaration. (Uncontroverted Facts ¶ 33.)

   a. Dr. Lynam's declaration stated that "the invention claimed in at least independent claims 1, 19 and 28 was invented by the Applicant prior to the publication date of Lynam ′026, namely, June 13, 2002." (PTX 024-192 to -193.)

   b. Dr. Lynam's declaration submitted in prosecution of the ′018 application did not reference the "thin glass" species.

50. On August 6, 2012, after receiving the response, the Examiner allowed the ′018 application to issue as the ′534 patent. (Uncontroverted Facts ¶ 34.)

   a. In the "Reasons for Allowance," the Examiner stated that Dr. Lynam's declaration submitted "under 37 CFR 1.131 is sufficient to overcome the Lynam US 2002/0072026 … reference[]." (PTX024-285.)

### (3) The '047 Patent

51. On February 25, 2013, Dr. Lynam (through his attorney) filed U.S. Patent Application No. 13/776,091 ("the ′091 application"), which issued as U.S. Patent No. 8,591,047 ("the ′047 patent") on November 26, 2013.  (Uncontroverted Facts ¶ 36.)

   a.  The sole named inventor on the ′091 application is Dr. Lynam.  (Uncontroverted Facts ¶ 37.)

   b.  The ′091 application is a continuation of U.S. Patent Application No. 13/590,854 ("the ′854 application").  (Uncontroverted Facts ¶ 38.)

   c.  Like the ′045 and ′018 applications, the ′091 application also included the Thin Glass Element among the pending independent claims.  (PTX026-214.)

52. Dr. Lynam acknowledged his "duty to disclose to the [Patent Office] all information which is known by [him] to be material to patentability" during prosecution of the ′091 application. (PTX026-002.)

53. On August 16, 2013, the Examiner issued an office action rejecting certain pending claims of the ′091 application as anticipated by the Lynam ′026 publication.  (Uncontroverted Facts ¶ 39.)

   a.  As before, the Examiner stated that "[t]he applied reference"—the Lynam ′026 publication—had a "common inventor" with the ′018 application and that the Lynam ′026 publication "constitutes prior art under 35 U.S.C. 102(e)."  (PTX026-164.)

54. On August 21, 2013, Dr. Lynam (through his attorney) responded to the Examiner's rejections based on the Lynam ′026 publication by submitting a sworn declaration.  (Uncontroverted Facts ¶ 40.)

    a.   In relevant part, Dr. Lynam's declaration stated that "[p]rior to June 13, 2002, the inventor and Applicant conceived of the claimed invention of at least the independent claims as filed in the present application."  (PTX026-213.)

    b.   Dr. Lynam's declaration further stated that "[f]or example, and with reference to claim 1 of the present application, the inventor and Applicant conceived of an exterior rearview mirror assembly," including wherein the "main plano mirror element comprises one of (a) a generally flat glass substrate having a surface coated with a metallic reflector coating and (b) a generally flat polymeric substrate having a thin glass element applied to a surface thereof and with an opposing surface thereof having a reflecting layer applied thereto… ."  (PTX026-213 to -214.)

55. On September 27, 2013, after receiving the response, the Examiner allowed the ′091 application to issue as the ′047 patent.  (Uncontroverted Facts ¶ 41.)

    a.   The Examiner stated in the Notice of Allowance that Dr. Lynam's declaration submitted "under 37 CFR 1.131(a) is sufficient to overcome the Lynam et al US 2002/0072026 reference."  (PTX026-379.)

### (4) The ′882 Patent

56. On October 15, 2013, Dr. Lynam (through his attorney) filed U.S. Patent Application No. 14/054,004 ("the ′004 application"), which was issued as U.S. Patent No. 8,783,882 ("the ′882 patent") on July 22, 2014.  (Uncontroverted Facts ¶ 42.)

    a.   The sole named inventor on the ′004 application is Dr. Lynam.  (Uncontroverted Facts ¶ 43.)

    b.   The ′004 application is a continuation of U.S. Patent Application No. 13/776,247, which is a continuation of the ′091 application.  (Uncontroverted Facts ¶ 44.)

57. Dr. Lynam acknowledged his "duty to disclose to the [Patent Office] all information which is known by [him] to be material to patentability" during prosecution of the ′004 application. (PTX027-230.)

58. On December 17, 2013, the Examiner issued an office action rejecting all pending claims and finding (1) that the claims were not entitled to claim priority to the ′872 provisional application and (2) that the claims therefore would have been obvious over the Lynam ′026 publication. (PTX027-136 to -137.)

    a. Specifically, the Examiner stated that the claims of the ′004 application were not entitled to claim priority to the ′872 provisional because "[t]he disclosure of the prior-filed application, Application No. 12/197,666 (and its parent Application No. 10/709,434 and Provisional Application No. 60/471,872)" failed to "provide adequate support or enablement in the manner provided by 35 U.S.C. 112(a)."  (PTX027-136.)

    b. In particular, the Examiner found that the priority applications did not provide support for "a main plano mirror element fixedly disposed at a first portion of said mirror backing plate element; . . . an auxiliary non-plano curved mirror element fixedly disposed at a second portion of said mirror backing plate element; wherein said main plano mirror element and said auxiliary non-plano curved mirror element are adjacently disposed at said mirror backing plate element in a side-by-side relationship and are not superimposed with one mirror element on top of the other mirror element; . . . wherein said first primary field of view of said main plano mirror element overlaps said second auxiliary field of view of said auxiliary non-plano curved mirror element."  (PTX027-136 to -137.)

59. On March 17, 2014, Dr. Lynam (through his attorney) responded to the Examiner's rejections based on the Lynam ʹ026 publication by submitting another sworn Rule 1.131 declaration. (PTX027-185.)

    a. In relevant part, Dr. Lynam's declaration stated that "[p]rior to June 13, 2002, the inventor and Applicant conceived of the claimed invention of at least the independent claims as filed in the present application."  (PTX027-185.)

    b. Dr. Lynam's declaration further stated that "[f]or example, and with reference to claim 1 of the present application, the inventor and Applicant conceived of an exterior rearview mirror assembly," including wherein the "main plano mirror element comprises a generally flat glass substrate having a surface coated with a metallic reflector coating[.]"  (PTX027-185 to -186.)

    c. The declaration made no reference to the "thin glass" species. (PTX027-185 to -187.)

60. After receiving the response, on July 22, 2014, the Examiner allowed the ʹ004 application to issue as the ʹ882 patent.  (PTX007-001.)

    a. Specifically, the Examiner stated that Dr. Lynam's declaration submitted "under 37 CFR 1.131(a) is sufficient to overcome the Lynam et al. reference (US 2002/0072026 A1) and to demonstrate that Applicant is entitled to the benefit of the earlier filing date of prior-filed Application No. 12/197,666 (and its parent application 10/709,434 and Provisional Application No. 60/471,872)."  (PTX027-350.)

*(5) The ʹ750 Patent*

61. Last, on May 16, 2016, Dr. Lynam (through his attorney) filed U.S. Patent Application No. 15/155,351 ("the ʹ351 application"), which issued as U.S. Patent No. 9,694,750 ("the ʹ750 patent") on July 4, 2017.  (Uncontroverted Facts ¶ 48.)

19

    a.  The sole named inventor on the ′351 application is Dr. Lynam.  (Uncontroverted Facts ¶ 49.)

    b.  The ′351 application is a continuation of U.S. Patent Application No. 14/556,339, which is a continuation of U.S. Patent Application No. 14/336,370 ("the ′370 application"), which is itself a continuation of the ′004 application.  (Uncontroverted Facts ¶ 50.)

62. Dr. Lynam (through his attorney) acknowledged his "duty to disclose to the [Patent Office] all information which is known by [him] to be material to patentability" during prosecution of the ′351 application.  (PTX029-002; PTX029-020; PTX029-097.)

63. On November 25, 2016, the Examiner issued an office action rejecting all pending claims of the ′351 application; however, the Examiner did not make any rejections based on the Lynam ′026 publication.  (PTX029-123 to -155.)

64. On February 24, 2017, Dr. Lynam submitted (through his attorney) a response to overcome the rejections.  (PTX029-184 to -208.)

65. On May 12, 2017, the Examiner allowed the ′351 application to issue as the ′750 patent. (PTX029-219.)

66. Dr. Lynam never disclosed the 2001 Dodge Ram Mirror to the Patent Office during prosecution of any Asserted Patent.  (Bench Trial Tr., ECF No. 743 at PageID.29266 (Lynam); ECF No. 731 at PageID.28288, 41:1-6 (Schlesinger); PTX021-104 to -115; PTX024-100 to -130; PTX026-111 to -140; PTX027-116 to -132; PTX029-097 to -110.).

67. Dr. Lynam testified that "[i]t never entered [his] mind" to disclose the 2001 Dodge Ram Mirror because it is "a trailer-towing mirror" that was not relevant to the "blind-zone problem" he was trying to address, and Dr. Lynam further opined that the 2001 Dodge Ram Mirror "was

materially different," "wasn't in the same field of endeavor," and "was a different animal,"
"like a different planet." (Jury Trial Tr., ECF No. 686 at PageID.26463–26465, 237:23-239:8
(Lynam); Bench Trial Tr., ECF No. 743 at PageID.29276 & 29296 (Lynam).)

## III.    CONCLUSIONS OF LAW

### A.    Legal Standard

"It is well settled that patent applicants are required to prosecute patent applications 'with
candor, good faith, and honesty.'" *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326
F.3d 1226, 1233 (Fed. Cir. 2003) (citation omitted). "A breach of this duty, when coupled with an
intent to deceive or mislead the PTO constitutes inequitable conduct[.]" *Id.* Inequitable conduct
cannot be cured by reissue or reexamination; rather, if the accused infringer meets its burden, then
the district court must weigh the equities to determine whether the applicant's conduct before the
PTO warrants rendering the entire patent unenforceable. *Therasense, Inc. v. Becton, Dickinson &
Co.*, 649 F.3d 1276, 1287–88 (Fed. Cir. 2011) (en banc). Indeed, "the taint of a finding of
inequitable conduct can spread from a single patent to render unenforceable other related patents
and applications in the same technology family." *Id.* at 1288 (describing the inequitable-conduct
charge as the "atomic bomb" of patent litigation).

In *Therasense*, the United States Court of Appeals for the Federal Circuit observed that
given the "far-reaching consequences" of the inequitable conduct doctrine, "charging inequitable
conduct ha[d] become a common litigation tactic[,]" which "[l]eft unfettered... ha[d] plagued not
only the courts but also the entire patent system." *Id.* at 1289. The Federal Circuit sought to
address this problem by "tighten[ing] the standards" in order to "redirect" the doctrine. *Id.* at 1290.
To prove inequitable conduct after the Federal Circuit's *Therasense* decision, a challenger "must
show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted

information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012) (citing *Therasense*, 649 F.3d at 1287).

"[A]s a general matter, the materiality required to establish inequitable conduct is but-for materiality." *Therasense*, 649 F.3d at 1291. "[I]t must be shown that the PTO would not have allowed the claim but for the nondisclosure or misrepresentation." *Rosuvastatin Calcium*, 703 F.3d at 519 (citing *Therasense*, 659 F.3d at 1287); *see also Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1345 (Fed. Cir. 2013) ("Typically, an allegation of inequitable conduct before the PTO requires proof that the patentee withheld or mispresented information that, in the absence of the withholding or misrepresentation, would have prevented a patent claim from issuing."). This requires a court to "apply the preponderance of the evidence standard and give claims their broadest reasonable construction." *Therasense*, 649 F.3d at 1291–92 (citing Manual of Patent Examining Procedure (MPEP) §§ 706, 2111 (8th ed., July 2010)).

To establish the requisite intent, intent to deceive the PTO must be "the single most reasonable inference able to be drawn from the evidence." *Id.* at 1290 (citation omitted). "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the [Patent Office] does not prove specific intent to deceive." *Id.* "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Id.*

### B.  Analysis

**1.  The Declarations**

First, SMR proposes the conclusion that Dr. Lynam committed inequitable conduct because he submitted false, if not "unmistakably false," declarations during the prosecution of the

′843, ′534, and ′047 patents with the intent to deceive the PTO (ECF No. 761 at PageID.31059–31061, ¶¶ 287–288, 292–294).   Specifically, according to SMR, Dr. Lynam declared that he conceived and reduced to practice "the invention of at least the independent claims" before June 13, 2002, yet he testified that he did not conceive or reduce to practice the Thin Glass Element recited in the claims until after June 13, 2002 (*id.* at PageID.31059–31060, ¶¶ 289–290). Alternatively, SMR argues that the false statements are material because they were used to overcome the Examiner's rejections (*id.* at PageID.31060, ¶ 292).   Last, according to SMR, Dr. Lynam had "strong illicit motivation to secure patents covering SMR's bridge spotter mirror for Magna's commercial gain because SMR released its bridge spotter mirror before Magna was able to introduce its WideVue mirror" (*id.* at PageID.31004, ¶ 6).   SMR points out that Dr. Lynam acted "unusually quickly" in pursuing patent claims within weeks of learning of SMR's bridge spotter mirror and responded in "an extraordinarily short time" in submitting his declarations in response to the Examiner's rejections (*id.* at PageID.31004–31005, ¶¶ 6–7).

According to Magna, Dr. Lyman's Rule 1.131 declarations did not need to demonstrate conception or reduction to practice of the "thin glass" species to overcome the Lynam ′026 publication anticipation rejections because the Lynam ′026 publication teaches only the "glass substrate having a surface covered with a metallic reflector coating" species (the "metallic reflector coating" species) of the independent claims of the Patents-in-Suit (ECF No. 756 at PageID.30012, ¶ 12).   Magna proposes that the declarations are "most reasonably read to say that he conceived of and reduced to practice the 'metallic reflector coating' species (rather than the 'thin glass' species) of the claimed invention prior to June 13, 2002," which is consistent with Dr. Lynam's trial testimony (*id.,* ¶¶ 13 & 15).   In support of its proposed conclusion, Magna points out that the substance of the declarations either omit reference to the thin glass feature or state that Dr. Lynam

invented only "one of" the potential species of the claimed genus prior to June 13, 2002 (*id.* at PageID.30013, ¶ 16). Magna also points out that the MPEP rule that antedating genus claims against a prior art reference requires proving conception and reduction to practice of only one species in that genus (*id.*).

37 C.F.R. § 1.131(a) provides that "[w]hen any claim of an application or a patent under reexamination is rejected, the applicant or patent owner may submit an appropriate oath or declaration to establish invention of the subject matter of the rejected claim prior to the effective date of the reference or activity on which the rejection is based." "[T]he materiality prong of inequitable conduct is met when an applicant files a false affidavit and fails to cure the misconduct." *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1344 (Fed. Cir. 2013). Indeed, where the patentee files an "unmistakably false affidavit," the patentee has engaged in an affirmative act of egregious misconduct such that "materiality is presumed." *Ohio Willow Wood*, 735 F.3d at 1345 (quoting *Therasense*, 649 F.3d at 1292).

Here, the "thin glass" feature appears in the Asserted Claim of the ′843 patent and in the Asserted Claims of the ′534, ′047, and ′750 patents. PTX001 (′843 patent at claim 1); PTX004 (′534 patent at claim 13); PTX006 (′047 patent at claim 1); PTX009 (′750 patent at claim 1). According to Dr. Lynam, this language means "you have two choices," with "option A" being the "metallic glass substrate" and "option B" being "this thin glass, polymeric substrate" (Bench Trial Tr., ECF No. 743 at PageID.29283). According to Dr. Lynam, "to satisfy the claim in its totality, you can have either A or B" (*id.*).

The Manual of Patent Examining Procedure instructs that "[t]he 37 CFR 1.131(a) affidavit or declaration must establish possession of either the whole invention claimed or something falling within the claim (*such as a species of a claimed genus*), in the sense that the claim as a whole reads

on it."  MPEP § 715.02 (How Much of the Claimed Invention Must Be Shown, Including the

General Rule as to Generic Claims) (9th ed., June 2020) (emphasis added).  Dr. Lynam's Rule

1.131 declarations submitted in support of the ′045, ′018, and ′091 applications do not indicate that

he conceived of or reduced to practice the full scope of the invention before June 13, 2002.  *See*

PTX021-1130 to -1133; PTX024-196 to -197; PTX026-213 to -215.  And the declaration he

submitted during the prosecution of the ′004 application made no reference to the "thin glass"

species at all.  *See also* PTX027-185 to -187.  Because Dr. Lynam's Rule 1.131 declarations do

not take a position regarding whether he had conceived of the "thin glass" species of the

independent claims prior to June 13, 2002, the Court concludes that they cannot be considered

false, let alone "unmistakably false."

Additionally, as this Court previously forecasted, a reasonable factfinder could conclude

from the total mix of information that Dr. Lynam's statements were part of a concerted effort to

obtain a post-hoc advantage in the competitive market, or a reasonable factfinder could conclude

that Dr. Lynam was engaged in a zealous but permissible defense of his intellectual property by

explaining how the claims were not precluded by his own prior art.  *Magna Mirrors of Am., Inc.*

*v. SMR Auto. Mirrors UK Ltd.*, No. 1:17-cv-77, 2021 WL 5052100, at *7 (W.D. Mich. Mar. 18,

2021) (denying summary judgment on inequitable conduct).  "[W]hen there are multiple

reasonable inferences that may be drawn, intent to deceive cannot be found."  *Therasense*, 649

F.3d at 1290–91.  "Whenever evidence proffered to show either materiality or intent is susceptible

of multiple reasonable inferences, a district court clearly errs in overlooking one inference in favor

of another equally reasonable inference."  *Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 528

F.3d 1365, 1376 (Fed. Cir. 2008).

In short, the Court concludes that SMR has not satisfied its burden of proving Dr. Lynam committed inequitable conduct by submitting false declarations with an intent to deceive the PTO.

## 2.   The Prior Art

Second, SMR proposes the conclusion that the single most reasonable inference to be drawn from the record evidence is that Dr. Lynam deliberately withheld the 2001 Dodge Ram Mirror from the Patent Office during prosecution of the Asserted Patents with knowledge of its materiality and with specific intent to deceive the Patent Office into issuing the Asserted Patents (ECF No. 761 at PageID.31065, ¶ 308). According to SMR, the jury's verdict that the Asserted Claims are invalidated by the 2001 Dodge Ram Mirror establishes that the 2001 Dodge Ram Mirror is "but for" material prior art to the Asserted Patent (*id.* at PageID.31065, ¶ 306).

According to Magna, the 2001 Dodge Ram Mirror does not disclose every limitation (including the "field of view" and "angling" limitations) in the Asserted Claims and therefore does not anticipate those claims and is not material prior art, such that the Asserted Patents would not have issued "but for" its non-disclosure to the PTO during prosecution of the Asserted Patents (ECF No. 756 at PageID.30016–30017, ¶¶ 28–34). Alternatively, Magna proposes that even if the 2001 Dodge Ram Mirror was material prior art to the Asserted Patents, Dr. Lynam's testimony evidences a plausible, good-faith explanation for its non-disclosure, to wit: Dr. Lynam testified that the 2001 Dodge Ram Mirror did not come to his mind during the prosecution of the Asserted Patents because it is a trailer towing mirror that is different from the field of technology of the Asserted Patents (*id.* at PageID.30019, ¶¶ 35 & 36).

The jury in this case found that SMR proved, by clear and convincing evidence, that the Asserted Claims of the Asserted Patents were invalid because they were "obvious" (Jury Verdict, ECF No. 739 at PageID.29167). "[I]f a claim is properly invalidated in district court based on" an

undisclosed reference, "then that reference is necessarily material because a finding of invalidity in a district court requires clear and convincing evidence, a higher evidentiary burden than that used in prosecution at the [Patent Office]." *Therasense*, 439 F.3d at 1292; *see also Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012) (affirming inequitable conduct finding based on inventor's failure to disclose two prior art references that were "necessarily material to patentability" because they were found to have invalidated Asserted Claims as obvious).

However, even assuming arguendo that the materiality requirement is established, "[k]nowledge of the reference and knowledge of materiality alone are insufficient after *Therasense* to show an intent to deceive." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1374–75 (Fed. Cir. 2012). "[C]lear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a known material reference." *Id.* (emphasis in original) (citation omitted). "While deceptive intent can be inferred from indirect and circumstantial evidence, that 'inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard.'" *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011) (quoting *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). "Intent to deceive cannot be inferred simply from the decision to withhold the reference where the reasons given for the withholding are plausible." *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1367 (Fed. Cir. 2003).

The Court concludes that the evidence of intent in this record is mostly speculative and does not rise to the level of meeting the "threshold level of intent to deceive by clear and convincing evidence." *Star Sci.*, 537 F.3d at 1368 (citing *Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394, 398 (Fed. Cir. 1996)). Hence, Magna need not offer any good faith explanation for failing to

identify the 2001 Dodge Ram Mirror to the Patent Office during prosecution of the Asserted Patents.  *See id.* ("The patentee need not offer any good faith explanation unless the accused infringer first carried his burden to prove a threshold level of intent to deceive by clear and convincing evidence.").  Nonetheless, the record contains Dr. Lynam's testimony that he did not identify the 2001 Dodge Ram Mirror during the prosecution of the Asserted Patents because it is a trailer towing mirror.  That explanation is not implausible on its face.  Indeed, as Magna points out (ECF No. 756 at PageID.30019–30020, ¶ 37), the reasonableness of this view is reinforced by SMR's own conduct, to wit:  when prosecuting the Sinelli ′469 patent with an independent claim identical to an unasserted claim in one of the Asserted Patents, SMR's own engineers did not cite the 2001 Dodge Ram Mirror, despite being aware of it (and having a sample of the mirror).  Paul Henion testified that his view at the time was that the Dodge Ram Mirror was simply different from the blind-zone mirror design they were claiming in their patent, in part because the Dodge Ram Mirror is a trailer-towing mirror (Jury Trial Tr., ECF No. 699 at PageID.27170).  In short, the Court concludes that deceptive intent is not the single most reasonable inference to be drawn from the evidence.

Accordingly, for the foregoing reasons, the Court rules against SMR on its inequitable conduct defense.  Pursuant to Federal Rules of Civil Procedure 52(a)(1) and 58, a Judgment consistent with this Opinion will issue.

Dated:  February 9, 2023                          /s/ Jane M. Beckering
                                                  JANE M. BECKERING
                                                  United States District Judge